U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP - 7 2016
CLERK, U.S. DISTRICT COURT
By ________
Deputy

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

THREE MOBILE COMMUNICATION DEVICES DESCRIBED IN ATTACHMENT A

Case No. 4:16-MJ- 624

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
THREE MOBILE COMMUNICATION DEVICES DESCRIBED IN ATTACHMENT A, CURRENTLY LOCATED AT 251 W. LANCASTER AVE, 2nd FLOOR, FORT WORTH, TX 76102

located in the Northern District of Texas, Fort Worth Division, there is now concealed *(identify the person or describe the property to be seized)*:
Controlled substances, proceeds or currency related to the sale or distribution of controlled substances, packaging material associated with the transportation of controlled substances via the United States Mail, and correspondence and other paraphernalia associated with the use or distribution of controlled substances.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) and 843 (b) | Possession with Intent to Distribute a Controlled Substance<br>Use of the US Mail in furtherance of a drug offense |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

T. Halsell, United States Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/7/16

[signature]
*Judge's signature*

City and state: Fort Worth, Texas

United States Magistrate Judge Jeffrey L. Cureton
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN THE MATTER OF THE SEARCH OF THREE MOBILE COMMUNICATION DEVICES DESCRIBED IN ATTACHMENT A, CURRENTLY LOCATED AT 251 W. LANCASTER AVE, 2nd FLOOR, FORT WORTH, TX 76102

Case No. 4:16-MJ-624

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, T. Halsell, a Postal Inspector with the United States Postal Inspection Service, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am currently employed as a U.S. Postal Inspector with the United States Postal Inspection Service and have been so employed for the past 10 years. I am currently assigned to the Homeland Security / Narcotics Team for the Fort Worth Division of the U.S. Postal Inspection Service. Part of my responsibilities as a member of the Homeland Security / Narcotics Team is the investigation of controlled substances transported through the U.S. Postal Service in violation of Title 21, United States Code, Section 841(a)(1), Distribution of a Controlled Substance, and 843(b), Use of the Mails to Facilitate or Commit a Drug Trafficking Crime, of The Drug Abuse Prevention and Control Act. I have participated in the interdiction of illegal drugs shipped via the U.S. Mail, and have received training relative to criminal investigations and narcotics trafficking from the U. S. Postal Inspection Service.

3. This affidavit is made in support of an application for search warrant for the following cellular telephones (**"TARGET DEVICES"**) located within the Northern District of Texas, Fort Worth Division, in the custody of the United States Postal Inspection Service located at 251 W. Lancaster Ave, 2nd Floor, Fort Worth, TX 76102: **TARGET DEVICE #1** is a white Samsung Galaxy Note 5 Model SM-N920V cellular phone assigned phone number 940-867-6934 with MEID 990007012037245. **TARGET DEVICE #2** is a black Huawei Model Y538 Union cellular phone assigned phone number 940-642-2148 with MEID 225564262605740613. **TARGET DEVICE #3** is a gold Samsung Galaxy S6 Model SM-G920V cellular phone assigned phone number 940-337-6961 with MEID 990004673370419.

4. Affiant believes that the following facts establish probable cause that the **TARGET DEVICES** contains evidence, fruits, and/or instrumentalities of violations of federal law, specifically 21 U.S.C. 841 and 846, that is, possession with intent to distribute a controlled substance and conspiracy to do the same. Specifically, affiant believes there are possibly text messages, contact information, photographs or other items communicated within this device that provide information about drug trafficking activities.

**PROBABLE CAUSE**

4. In July 2015, Postal Inspectors in the Fort Worth Division were contacted by US Postal Service personnel at a station in Wichita Falls, TX, concerning the possible shipment of illegal narcotics going through their facility. Inspectors began an investigation and identified multiple addresses within the city of Wichita Falls, TX, which were being utilized to receive

parcels containing illegal narcotics. All of the parcels being mailed to the addresses were being mailed from Oregon. Postal Inspectors have been working to identify the significant role players within the Drug Trafficking Organization along with Wichita Falls Police Department.

5. One of the addresses identified during the investigation was 4704 N. Shore Dr., Wichita Falls, TX 76310. One of the parcels was intercepted and warrant was obtained. Federal Warrant 4:16-MJ-024 was executed on January 21, 2016. The parcel contained a green leafy substance consistent with marijuana that weighed approximately 2 lb. 12.9 oz. The substance was field tested with a NIK test and received a positive result for marijuana. On January 25, 2016, Postal Inspectors and Wichita Falls Police Officers observed parcels delivered to 4704 N. Shore Dr., Wichita Falls, TX 76310, including the parcel that was intercepted on January 21, 2016. Postal Inspectors observed a white male with brown curly hair arrive at the residence in a 2-door Honda Accord and leave with the parcels. Officers were unable to get a complete plate on the vehicle, and it was lost during surveillance shortly after leaving the residence.

6. On February 18, 2016, Postal Inspectors and Wichita Falls Police Officers observed two parcels delivered to 4704 N. Shore Dr., Wichita Falls, TX 76310. Shortly after the parcels were delivered, a white male, with brown curly hair, was observed arriving at the residence and leaving with the parcels. Surveillance was conducted and the young man was followed to an apartment complex not far from the address. After a short time in the apartment complex, the young man left and headed to downtown Wichita Falls, TX. Officers did not observe the young man leave with any of the parcels he retrieved from 4704 N. Shore Dr., Wichita Falls, TX. Surveillance units followed the young man to A to Z Bail Bonds at 820 7th St, Wichita Falls, TX 76301. After the young man left A to Z Bail Bonds, a traffic stop was

initiated for failure to signal a left turn. The young man was identified as Randall Dizon, who is currently on probation in Wichita County, Texas, for Possession of Marijuana (5 to 50 lbs.).

7. In April 2016, another address was identified as receiving parcels from Oregon that is related to our investigation. On June 14, 2016, Postal Inspectors received notification of two parcels destined for 2945 Blankenship St., Wichita Falls, TX 76308. On June 15, 2016, Postal Inspectors and Wichita Falls Police Officers conducted surveillance at 2945 Blankenship St., Wichita Falls, TX 76308. After the parcels were delivered, Officers observed a silver Volkswagen Jetta arrive at the residence and retrieve the parcels from the porch and place them in the trunk of the vehicle. The individual who exited the vehicle appeared to be Randall Dizon. During the surveillance, Officers determined the vehicle belonged to Jessica Zambrano and bore Texas license plate DFF-2410. Affiant conducted research on social media and determined Jessica Zambrano was involved in a relationship with Randall Dizon. Surveillance units followed the Volkswagen Jetta until it arrived at 3510 Garfield St, Wichita Falls, TX 76308. Officers observed Dizon carry the parcels into the residence. Surveillance was terminated once the parcels were in the residence.

8. On August 2, 2016, Postal Inspectors received notification of two parcels destined for 2945 Blankenship St., Wichita Falls, TX 76308 and two parcels destined for 1407 Hunt St., Wichita Falls, TX 76302. Postal Inspectors conducted surveillance during the delivery to 1407 Hunt St., Wichita Falls, TX 76302. The parcels were left on the porch several hours and no one was observed at the residence. At approximately 12:15 pm, Postal Inspectors drove from the Hunt Street address to 3510 Garfield St., Wichita Falls, TX 76308, and observed the silver Volkswagen Jetta bearing Texas license plate DFF-2410, in the driveway of the residence. Postal Inspectors traveled to 2945 Blankenship St., Wichita Falls, TX 76308, to

determine if the two parcels destined for that address were delivered. Postal Inspectors observed a silver car in the rear view mirror and saw the license plate, which matched the vehicle at 3510 Garfield St., Wichita Falls, TX 76308. Postal Inspectors proceeded to drive back to 1407 Hunt St., Wichita Falls, TX 76302 and noticed the silver Volkswagen Jetta was traveling in the same direction. Postal Inspectors observed the silver Volkswagen Jetta at 1407 Hunt St., Wichita Falls, TX 76302 and saw the driver of the vehicle, a male, with the two parcels in his hands. Approximately ten minutes later, Postal Inspectors saw the Volkswagen Jetta back at 3510 Garfield St., Wichita Falls, TX 76308, parked in the driveway. Surveillance was terminated once the vehicle was observed back at the residence.

9. On August 31, 2016, Postal Inspectors received notification of two parcels destined for 1407 Hunt St., Wichita Falls, TX 76302. On September 1, 2016, Postal Inspectors intercepted the two parcels for investigative purposes. This Affidavit is made subsequent to an application for the issuance of a search warrant for the following Priority Mail parcels which was granted and executed as described below:

Parcel #1

| | |
|---|---|
| TRACKING NUMBER | 9505513008216243019505 |
| ADDRESSEE: | Joshua Handford<br>1407 Hunt St<br>Wichita Falls, TX 76302 |
| SENDER: | Ron Newman<br>1060 SW Kokanee Lane<br>Grants Pass, OR 97527 |
| DATE MAILED: | August 30, 2016 |
| CLASS OF MAIL: | Priority Mail |
| PLACE MAILED: | Grants Pass, OR 97526 |
| POSTAGE AFFIXED: | $18.75 |
| APPROXIMATE WT: | 3 lb. 4 oz. |
| APPROXIMATE SIZE: | 12"x12"x5 1/2" |

Parcel #2

| | |
|---|---|
| TRACKING NUMBER | 9505513008216243019512 |
| ADDRESSEE: | Joshua Handford<br>1407 Hunt St<br>Wichita Falls, TX 76302 |
| SENDER: | Ron Newman<br>1060 SW Kokanee Lane<br>Grants Pass, OR 97527 |
| DATE MAILED: | August 30, 2016 |
| CLASS OF MAIL: | Priority Mail |
| PLACE MAILED: | Grants Pass, OR 97526 |
| POSTAGE AFFIXED: | $18.75 |
| APPROXIMATE WT: | 4 lb. 1 oz. |
| APPROXIMATE SIZE: | 12"x12"x5 1/2" |

10. Affiant is aware through training and experience, as well as information from other Postal Inspectors with extensive experience in drug trafficking investigations, that the U. S. Mail is a common and preferred method of drug traffickers to ship their product. Priority Mail Express, Express Mail and Priority Mail are frequently used by drug dealers for not only shipping illegal drugs, but also for shipping the proceeds and money from illegal drug sales and purchases. Use of the U. S. Mail is favored because of the speed, reliability, and low cost of this service, as well as the perceived minimal chance of detection of illegal drugs, money, or financial instruments shipped in such a manner.

11. Affiant is also aware that drug traffickers often use fictitious return addresses and names on return addresses, as well as real names and real addresses, with or without the actual person's knowledge or consent, to avoid detection in the event the parcel is intercepted by law enforcement officers. Parcels containing illegal drugs often provide minimal information on the mailing label to avoid detection of a fictitious name or return address. Drug

traffickers normally use heavy tape on the seams and corners of a parcel and have been known to use sealed containers and masking scents, to interfere with any drug detection canine's ability to detect the narcotics. It is also common for drug traffickers to mail parcels from a different post office than the one located in the Zip Code area used on the return address, also to avoid detection of fictitious information.

12. Each of the parcels has a hand written label and was mailed from a Zip Code in Oregon. The packaging for each of the parcels consists of a USPS branded Priority Mail Large Flat Rate Box with clear packing tape on the seams. Postal Inspectors conducted computer database address verifications on each of the parcels, and the database indicated the return address of 1060 S.W. Kokanee Lane, Grants Pass, OR 97527, as listed on the parcels, did exist. There is no one named "Ron Newman" associated with the address.

13. Postal Inspectors also checked the database for records of the delivery address on each of the parcels. The database indicated the delivery address, 1407 Hunt, Wichita Falls, TX 76302, did exist. There was no one named "Joshua Handford" associated with the address.

14. On September 1, 2016, at the US Postal Inspection Service Technical Warehouse, 870 Mustang Dr., Grapevine, TX 76051, Postal Inspectors presented each of the suspect parcels, along with known neutral parcels, to narcotics detection dog "Ace" who is assigned to Officer Lowell of US Immigration and Customs Enforcement. "Ace" is a 9-year old Dutch Shepherd, and was last certified in March 2016, as a narcotics detection canine by US Immigration and Customs Enforcement. Postal Inspectors witnessed "Ace" display behavior that Officer Lowell stated was a positive, passive narcotic alert behavior towards each of the parcels, indicating it sensed the presence of controlled substances inside of each of the parcels.

15. Based upon the foregoing facts and circumstances, Affiant believed that controlled substances and/or money and proceeds from the illegal sales and purchases of controlled substances are contained in the above-described parcel, in violation of 21 U.S.C. §§ 841(a) and 843(b). Therefore, Affiant requested to search the parcels for any such controlled substances, proceeds, packaging material associated with controlled substances, or correspondence associated with the use or distribution of controlled substances, and if any such contraband be found therein, to seize the same.

16. On September 1, 2016, Postal Inspectors executed Federal Search Warrant 4:16-MJ-595 on two Priority Mail parcels addressed to 1407 Hunt St., Wichita Falls, TX 76302. Priority Mail 9505513008216243019505 contained approximately 1 lb .03 oz. of a green leafy substance consistent with marijuana. The substance was field-tested using a NIK test, which provided a positive result for marijuana. Priority Mail 9505513008216243019512 contained approximately 2 lb. 11.3 oz of green leafy substance consistent with marijuana. The parcels were packaged the same way using multiple layers of black Food Saver bags, black trash bags, and a single picture frame in each parcel.

17. On September 2, 2016, Postal Inspectors and Wichita Falls Police Department conducted a controlled delivery of the described parcels to 1407 Hunt St., Wichita Falls, TX 76302. Physical surveillance will be established at 1407 Hunt St., Wichita Falls, TX 76302 and 3510 Garfield St., Wichita Falls, TX 76308. The listed parcels were successfully delivered and then transported by Randall Dizon in his vehicle and taken into the residence at 3510 Garfield St., Wichita Falls, TX 76308.

18. On September 2, 2016, Postal Inspectors and Wichita Falls Police Department executed a search warrant at 3510 Garfield St., Wichita Falls, TX 76308. During the execution

of the warrant, Postal Inspectors observed parcels similar to those brought to the house by Randall Dizon. The parcels had addresses handwritten on them that your Affiant recognized as being associated with the investigation. Officers located a safe in the 2nd bedroom and discovered almost $23,000 in the safe, along with check books for checking accounts of Jessica Zambrano and Randall Dizon. Officers recovered the suspected marijuana in the dining room, a small bag of marijuana in a kitchen cabinet, a syringe with yellowish colored liquid and several yellow pills also in the kitchen cabinet. Officers also located two cell phones in the living room, as well as a ledger with transactions recorded similar to what Investigators would consider to be dope notes. Affiant and a member of Wichita Falls Police Department visited with Randall Dizon at the residence. Dizon indicated he wanted to cooperate with the investigation. Randall Dizon provided information about his role in the drug trafficking organization, but some things he did not want to talk about. Dizon was asked about the cell phones and he indicated there was information on both of them and he consented verbally to allow his cell phones to be searched. Dizon was transported to Wichita Falls Police Department.

19. On September 2, 2016, at the Wichita Falls Police Department, Dizon was again interviewed. Dizon was read his Miranda Rights, which he verbally and in writing acknowledged at 4:50 pm on September 2, 2016. Dizon recounted everything discussed at the residence and then was presented with a Consent to Search form for the two cell phones, which he signed. Dizon did hesitate because he stated there were pictures on there that were embarrassing because they were nude photos of him and Jessica Zambrano. Affiant told Dizon he was not interested in those photos, just information related to the drug operation. The interview was concluded after Dizon consented to the search of his cell phones.

21. On September 2, 2016, at the Wichita Falls Police Department, Jessica Zambrano was interviewed. Zambrano is the girlfriend of Dizon, lives in the residence with Dizon and it was her car that Dizon used to transport the parcels from 1407 Hunt St., Wichita Falls, TX, to 3510 Garfield St., Wichita Falls, TX. Zambrano stated she did not know anything about what Dizon was involved with. Zambrano indicated she did not have access to the safe in the house where her checkbook was stored. Zambrano said she never could smell marijuana when she came home from work, although there was some user quantity in the kitchen in a zip lock bag. Zambrano admitted to injecting Dizon with his steroids shot on at least one occasion. Zambrano was evasive about answering questions related to Dizon and his marijuana business. Zambrano verbally consented to a search of her cell phone, but after several questions were asked about addresses and possible co-workers being involved, she withdrew her consent. Zambrano never acknowledged she knew what Dizon did during the day. Zambrano could not tell Investigators how much Dizon received in his monthly VA benefits check, but acknowledged he provided her cash for rent. Investigators kept Zambrano's phone as evidence and returned her to the residence at 3510 Garfield St., Wichita Falls, TX 76308.

22. On September 6, 2016, your Affiant, in good faith, downloaded the contents of **TARGET DEVICE #1 and #2,** at the US Postal Inspection Service Division Headquarters in Fort Worth, TX 76102. The contents in the phone were glanced over, but no in depth analysis was conducted. On September 6, 2016, Wichita Falls Police Department contacted Affiant and stated Dizon contacted them on September 4, 2016 and withdrew consent. Affiant has not accessed the information from **TARGET DEVICE #1 and #2** since being notified of the withdrawal of consent.

23. **TARGET DEVICE #1 and #2** were recovered from 3510 Garfield St., Wichita Falls, TX 76308. Dizon admitted during his interview that information on each of the cell phones pertained to his activities related to drug trafficking. **TARGET DEVICE #3** was recovered from Jessica Zambrano during her interview. Zambrano provided verbal consent during the interview but became uneasy about Affiant going through her phone and withdrew consent.

24. Based upon the foregoing facts and circumstances, affiant believes that probable cause exists that the **TARGET DEVICES** contains evidence, fruits, and/or instrumentalities of violations of federal law, specifically 21 U.S.C. 841 and 846, that is, possession with intent to distribute a controlled substance and conspiracy to do the same. Specifically, affiant believes there are possibly text messages, contact information, photographs or other items communicated within this device that provide information about drug trafficking activities.

25. Since they were seized the **TARGET DEVICES** have been in the custody of the United States Postal Inspection Service located at 251 W. Lancaster Ave, Fort Worth, TX 76102.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

27. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and PDA. In my training and experience, examining data stored on devices of this type

can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

32. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICES** as described in Attachment A.

Respectfully submitted,

Thomas Halsell
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me on September 7, 2016.

JEFFREY L. CURETON
United States Magistrate Judge

## ATTACHMENT A

### Description of device to be searched

**TARGET DEVICE #1** is a white Samsung Galaxy Note 5 Model SM-N920V cellular phone assigned phone number 940-867-6934 with MEID 990007012037245.

**TARGET DEVICE #2** is a black Huawei Model Y538 Union cellular phone assigned phone number 940-642-2148 with MEID 225564262605740613.

**TARGET DEVICE #3** is a gold Samsung Galaxy S6 Model SM-G920V cellular phone assigned phone number 940-337-6961 with MEID 990004673370419.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of **21 U.S.C. §§ 846 and 841(a)(1)** and involve **Randall Dizon and Jessica Zambrano** since **July 1, 2015** including:

a. all communications related to drug trafficking;

b. all internet usage history that may reveal evidence of drug trafficking, such as package tracking, internet mail communications, electronic payment receipts, etc.

c. lists of customers and related identifying information;

d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

f. any information recording **Randall Dizon and Jessica Zambrano's** schedule or travel from **July 1, 2015** to the present;

g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;